FILED
JEANNE A. NAUGHTON, CLERK
NOV -8 2019
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re: | Case No.: | 19-19243-JKS |
| --- | --- | --- |
| **BULA WORLD HOLDINGS LIMITED LIABILITY COMPANY,** | Chapter: | 11 |
| | Judge: | John K. Sherwood |
| Debtor. | | |

## DECISION AND ORDER REGARDING CONFIRMATION OF CHAPTER 11 PLAN

The relief set forth on the following pages, two (2) through ten (10), is hereby

**ORDERED.**

_____
HONORABLE JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

Dated: November 8, 2019

Page 2
Debtor: Bula World Holdings Limited Liability Company
Case No.: 19-19243-JKS
Caption: **Decision and Order Regarding Confirmation of Chapter 11 Plan**

## FACTS AND PROCEDURAL HISTORY

1. On May 6, 2019, Bula World Holdings Limited Liability Company (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code. The Debtor is a single asset real estate entity pursuant to 11 U.S.C. § 101(51B) and is the owner of real property located at 109 U.S. Highway 206, Stanhope, New Jersey 07874 (the "Property").[1]

2. The Property is occupied by a single tenant, Zipload, Inc. d/b/a Salt Gastropub ("Salt"), a restaurant business.[2] Salt and the Debtor are affiliated entities controlled and operated by Bradley and Laurie Boyle (the "Boyles").[3] Salt leases the Property from the Debtor under a lease agreement for $5,374.56 per month.[4]

3. Prior to the filing of this case, on May 1, 2017, the Boyles filed personally for relief under Chapter 13 of the Bankruptcy Code.[5] But, the Boyles' Chapter 13 case was dismissed on August 27, 2019.[6]

4. On December 31, 2007, the Debtor gave Comerica Bank ("Comerica") a mortgage against the Property (the "Mortgage") to secure a note for the original principal amount of $802,000.00.[7] The Mortgage includes an assignment of rents clause.[8] Additionally, Salt is a co-borrower with the Debtor on the note.[9] The terms of the Mortgage were modified three (3) times since it was executed.[10]

---

[1] ECF No. 22-1 at 3.
[2] *Id.* at 4.
[3] ECF No. 21 at ¶ 21.
[4] ECF No. 22-1 at 4.
[5] Case No. 17-18935-JKS.
[6] *Id.* at ECF No. 107.
[7] Claim 4, Ex. A.
[8] *Id.* at ¶ 16.
[9] *Id.*, Ex. B at 6.
[10] *See Id.* Ex. C, Ex. D and Ex. E.

Page 3
Debtor: Bula World Holdings Limited Liability Company
Case No.: 19-19243-JKS
Caption: **Decision and Order Regarding Confirmation of Chapter 11 Plan**

---

5. The Debtor was able to satisfy the obligations under the Mortgage for nearly ten (10) years. In 2017, the Debtor defaulted on the Mortgage.[11] Comerica initiated a mortgage foreclosure action against the Debtor in the Superior Court of New Jersey, Sussex County Chancery Division (the "State Court"). On January 9, 2019, the State Court entered a final judgment of foreclosure against the Debtor in the amount of $653,398.28 (the "Foreclosure Judgment").[12] The Debtor filed this Chapter 11 case to stop the sheriff's sale of the Property.

6. On June 4, 2019, Comerica filed a motion for relief from the automatic stay to proceed against the Property and a motion to convert the case from chapter 11 to chapter 7.[13] The parties agreed that the Court should address confirmation of the Plan before addressing these motions.[14]

7. On July 3, 2019, the Debtor filed its Small Business Chapter 11 Combined Plan and Disclosure Statement (the "Plan").[15] The Plan describes the claims against the Debtor's estate as follows:

   A. Class 1: the $65,219.85 secured claim held by US Bank Cust for PC7 Firstrust Bank (the "Tax Lienholder") which arose from a tax sale certificate purchased on October 16, 2017.

   B. Class 2: Comerica's Foreclosure Judgment claim of $653,398.28 plus costs of $6,683.98 which is treated as wholly secured in the Plan.

   C. Class 3: unsecured claims (i) $142,895.73 held by Coray Kirby ("Kirby") arising from funds loaned to the Debtor to acquire the Property, and (ii) $13,000.00 held by Michael Fistiggi, Debtor's accountant.

---

[11] ECF. No. 21 at ¶ 8.
[12] ECF No. 13-10.
[13] ECF Nos. 13 and 14.
[14] ECF No. 34 at 61.
[15] ECF No. 22.

Case 19-19243-JKS    Doc 46    Filed 11/08/19    Entered 11/08/19 16:58:29    Desc Main
Document    Page 4 of 10

Page 4
Debtor:     Bula World Holdings Limited Liability Company
Case No.:   19-19243-JKS
Caption:    **Decision and Order Regarding Confirmation of Chapter 11 Plan**

   D. A potential priority claim by the Internal Revenue Service for taxes due upon the filing of the Debtor's 2018 and 2019 tax returns.[16]

8. The Plan lists the value of the Property as $500,000.00.[17]

9. The Plan calls for capital contributions from the Boyles as follows:

   A. $42,500.00 through December 2019,

   B. $5,500.00 per month for 2020 through 2022, totaling $66,000.00 per year, and

   C. $6,000.00 per month in 2023 and 2024, totaling $72,000.00 per year (together, the "Capital Contributions").[18]

10. The Plan explains that the Capital Contributions "will enable the Debtor to make the payments committed" in the Plan and will "also represent new value to, *inter alia*, pay allowed administration costs . . . ."[19]

11. On August 6, 2019, the United States Trustee (the "U.S. Trustee") filed a limited objection to confirmation of the Plan.[20] The U.S. Trustee's objection raised concerns over the feasibility of the Plan pursuant to 11 U.S.C. § 1129(a)(11). Specifically, the U.S. Trustee was concerned that the Boyles' then pending Chapter 13 case would limit the Boyles' ability to make the Capital Contributions.[21]

12. On August 6, 2019, Comerica filed its objection to confirmation of the Plan. Comerica's objection argued, among other things, that the Plan impermissibly treats Comerica's secured

---

[16] *Id.* at 3-4.
[17] *Id.* at 10.
[18] *Id.* at 13.
[19] *Id.*
[20] ECF No. 30.
[21] *Id.* at 3.

Page 5
Debtor:     Bula World Holdings Limited Liability Company
Case No.:   19-19243-JKS
Caption:    **Decision and Order Regarding Confirmation of Chapter 11 Plan**

---

claim and unsecured deficiency claim as entirely secured in violation of 11 U.S.C. §§ 506(a), 1111(b), 1122, and 1129(a)(1).[22]

13. On August 12, 2019, the Debtor filed a certification of balloting that indicated Class 1 and Class 3 voted to accept the Plan and Comerica (Class 2) voted to reject the Plan.[23] The ballot gave Comerica a single vote representing its impaired secured claim pursuant to the Plan. However, Comerica also submitted a rejecting unsecured ballot representing the $153,398.28 portion of its claim that it argues should be considered as a general unsecured claim. The Debtor did not count that additional ballot on the grounds that the Comerica claim is "treated as fully secured in Class 2" of the Plan. The Debtor acknowledged that "If the Comerica unsecured ballot is counted toward the vote in Class 3, that Class would then be deemed to have rejected the Plan."[24]

14. On August 13, 2019, the Court held a hearing regarding confirmation of the Plan. During that hearing, the Court considered the testimony of Laurie Boyle and the exhibits presented. The parties agreed to submit their closing arguments in writing. Post-hearing submissions were filed by the Debtor, Comerica and the United States Trustee.[25] From these submissions and the testimony and arguments at the confirmation hearing, the Court makes the following findings:

   A. The Salt restaurant is the only source of funds for the Debtor, the Boyles individually (through salary and distributions) and for the restaurant itself. The Debtor contends that the revenue from the restaurant was enough to remain current on its obligations for

---

[22] ECF No. 28.
[23] ECF No. 31.
[24] *Id.* at ¶ 7.
[25] ECF Nos. 35, 38, 40 and 41.

Case 19-19243-JKS    Doc 46    Filed 11/08/19    Entered 11/08/19 16:58:29    Desc Main
Document    Page 6 of 10

Page 6
Debtor: Bula World Holdings Limited Liability Company
Case No.: 19-19243-JKS
Caption: **Decision and Order Regarding Confirmation of Chapter 11 Plan**

almost ten (10) years. But, the restaurant and the Boyles were sidetracked by an unsuccessful attempt to open a second restaurant. Now that their undivided attention is back to Salt, the Debtor and the Boyles contend that revenues will return to historic levels.

B. The evidence on feasibility of the Debtor's Plan was not persuasive. The Plan stated that the Debtor would be supported by the "Capital Contributions" from the Boyles. At the confirmation hearing, the U.S. Trustee and Comerica raised the legitimate question of whether the Boyles would be able to make these Capital Contributions since they were debtors in their individual Chapter 13 proceeding. Now, the Boyles' individual case has been dismissed and they apparently intend to deal with their personal obligations outside of the Chapter 13 process. They will still need their salaries from Salt to do so. Also, the Debtor has now clarified that the source of the Capital Contributions will be both the Boyles and the payment by Salt of $150,000 of overdue rent to the Debtor. The Court does not see this as a meaningful change. The bottom line is that the source of all the Debtor's financial support here is Salt – whether it is described as distributions to the Boyles or repayment of overdue rent makes no difference. Feasibility depends on whether Salt can pay its own bills, pay salaries to the Boyles, pay the Debtor's past due property taxes, pay the Comerica debt and satisfy the Debtor's other Plan obligations.[26] As the record now stands, the Court cannot find that the Debtor has met its burden to show feasibility as required by 11 U.S.C.

---

[26] Comerica raised various concerns about Salt's financial wherewithal that have not been addressed by the Debtor. See ECF No. 38 at 36-45.

payes 7.

Case 19-19243-JKS    Doc 46    Filed 11/08/19    Entered 11/08/19 16:58:29    Desc Main
Document    Page 7 of 10

Page 7
Debtor:     Bula World Holdings Limited Liability Company
Case No.:   19-19243-JKS
Caption:    **Decision and Order Regarding Confirmation of Chapter 11 Plan**

§ 1129(a)(11). Specifically, there needs to be proof that Salt will have enough cash flow to afford the Capital Contributions set forth in the Debtor's 5-year projections.[27] On the positive side, the Court notes that the Debtor is apparently current on its post-petition adequate protection payments to Comerica and post-petition taxes. Thus, the Debtor may be able to prove feasibility at a future confirmation hearing if it decides to take that route.

C. The evidence shows that Kirby's claim is not against the Debtor. According to the Kirby proof of claim and other documentation, the claim appears to be against the Boyles and possibly Salt.[28] The Debtor testified that Kirby's claim was accepted because the funds advanced by Kirby were used to acquire the Property. Even accepting this as the Debtor's motivation for accepting the Kirby claim, the documents say otherwise. Thus, the Court agrees with Comerica on this factual issue. The Kirby ballot should be disregarded and Kirby should not be treated as an unsecured creditor of the Debtor under the Plan.

15. The Court denies confirmation of the Plan because the Debtor has not met its burden to show feasibility as set forth above. The Court will also briefly address some of the legal obstacles that the Debtors must overcome for confirmation.

---

[27] ECF No. 22-2.
[28] *See* Case No. 17-18935-JKS, Claim 11-1.

Case 19-19243-JKS    Doc 46    Filed 11/08/19    Entered 11/08/19 16:58:29    Desc Main
Document    Page 8 of 10

Page 8
Debtor:     Bula World Holdings Limited Liability Company
Case No.:   19-19243-JKS
Caption:    **Decision and Order Regarding Confirmation of Chapter 11 Plan**

## LEGAL ANALYSIS

A. <u>Classification of Comerica's Claim</u>

16. Comerica objects to the classification of its entire claim as a secured claim in Class 2 under the Plan. Section 506(a) of the Bankruptcy Code addresses the determination of the secured status of claims that are "undersecured."[29] Pursuant to this section, the claims of undersecured creditors are bifurcated into two distinct claims – a secured claim up to the value of the collateral securing the claim, and an unsecured claim for any amount greater than the available value of the collateral.[30]

17. In chapter 11 cases, § 506(a) works in conjunction with § 1111(b) to give an undersecured creditor a choice. Either the creditor may hold two claims against the debtor's estate pursuant to § 506(a), or the creditor may elect to waive its unsecured claim and have its entire claim treated as secured by the collateral pursuant to § 1111(b).[31] The choice between § 506(a) treatment and § 1111(b) treatment is in the hands of the undersecured creditor.[32]

18. Based on these basic and well-established principles of bankruptcy law, Comerica argues that the Plan improperly classifies its undersecured secured claim and unsecured deficiency claim together. In other words, it is a violation of the Bankruptcy Code for a debtor to force a § 1111(b) election upon a creditor.[33]

---

[29] 11 U.S.C. § 506(a).
[30] *Id.*; *see also In re Scarborough*, 461 F.3d 406, 409-10 (3d Cir. 2006).
[31] 11 U.S.C. § 1111(b); *see also In re 266 Washington Assoc.*, 141 B.R. 275, 285 (Bankr. E.D.N.Y 1992).
[32] Fed. R. Bankr. P. 3014 (stating "[a]n election of application of § 1111(b)(2) of the Code *by a class of secured creditors* in a chapter 9 or 11 case may be at any time prior to the conclusion of the hearing on the disclosure statement . . . .") (emphasis added).
[33] *In re 266 Washington Assoc.*, 141 B.R. at 286.

Case 19-19243-JKS    Doc 46    Filed 11/08/19    Entered 11/08/19 16:58:29    Desc Main
Document    Page 9 of 10

Page 9
Debtor:     Bula World Holdings Limited Liability Company
Case No.:   19-19243-JKS
Caption:    **Decision and Order Regarding Confirmation of Chapter 11 Plan**

19. The Plan treats Comerica's claim as fully secured by the Property which the Debtor values at $500,000.00.[34] The Foreclosure Judgment is in the amount of $653,398.28.[35] Additionally, Comerica's claim is subordinate to the Tax Lienholder's undisputed claim of $65,219.85.[36] After accounting for the Tax Lienholder's claim there is $434,780.15 remaining equity in the Property to secure Comerica's claim. Applying § 506(a) to Comerica's claim results in Comerica holding a secured claim of $434,780.15 and an unsecured claim of $218,618.13.

20. In some respects, the Court does not see this as a significant issue. For voting purposes, even if Comerica's unsecured deficiency claim was counted in Class 3 and thus Class 3 rejected the Plan, the Debtor would still have an impaired consenting class (Class 1) which would satisfy the § 1129(a)(10) requirement. Thus, the Debtor could theoretically confirm the Plan under § 1129(b). Also, the fact that Comerica also has a claim against Salt suggests that the Comerica claim is going to have to be paid in full one way or another. Whether § 1122 allows an undersecured creditor to be separately classified under a Chapter 11 plan because it has other sources of recovery from non-debtors is an interesting issue.[37] But the Court will not decide it at this time.

B. <u>The Absolute Priority Rule</u>

21. The more significant impact of Comerica's assertion that it should be treated as a holder of an unsecured claim in this case relates to its argument that the Plan violates the absolute priority rule. Generally, Comerica argues that the Plan is not "fair and equitable" because the Boyles are retaining their equity interest in the Debtor under the Plan and unsecured creditors' claims

---

[34] ECF No. 22 at 10.
[35] ECF No. 13-10.
[36] ECF No. 22 at 10.
[37] *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.* 987 F.2d 154, 161 (3d Cir. 1993).

Page 10
Debtor: Bula World Holdings Limited Liability Company
Case No.: 19-19243-JKS
Caption: **Decision and Order Regarding Confirmation of Chapter 11 Plan**

---

are not being paid in full.[38] The Debtor responds by invoking the "new value exception" to the absolute priority rule and notes that Comerica has no cause to complain because its claim is being paid in full under the Plan.

22. Again, since the Court is denying confirmation of the Plan at this time, this issue does not have to be decided. But, certain observations are in order –

   A. The argument that a creditor who is getting paid 100% of its claim under a plan has no standing to raise the absolute priority rule as an objection has some support.[39]

   B. Assuming Comerica has standing to raise the absolute priority argument, the Court believes there is a "new value exception" to the rule even though the Supreme Court did not expressly say so in *LaSalle*. But *LaSalle* provides that for a debtor to make use of the new value exception, the market (parties other than existing equity) has to have the opportunity to buy the Debtor's equity at a price better than that being proposed under the Plan.[40] It does not appear that this has occurred in this case.

## CONCLUSION

23. For the foregoing reasons, confirmation of the Plan is denied.

---

[38] 11 U.S.C. § 1129(b)(2)(B)(ii); *Bank of Am. Nat. Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 119 S.Ct. 1141 (1999) (discussion of the absolute priority rule and the "new value corollary").
[39] *See In re G-1 Holdings Inc.*, 420 B.R. 216, 255 (D.N.J. 2009).
[40] *LaSalle*, 119 S.Ct. at 1422-24.